# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.

JOCKO DANE ROSELLO,

    *Defendant*.

Case No. 1:21-cr-7

Judge Jeffery P. Hopkins

## OPINION AND ORDER

Roller coaster. That's one way to describe a case with no shortage of twists and turns. When Defendant Jocko Dane Rosello was charged in a two-count indictment on March 4, 2021, with receipt and possession of child pornography, no one could have predicted all that was to come. In the months and years that have followed, Rosello has churned through five sets of attorneys, combed through discovery for more than two years, requested to continue trial several times, moved (unsuccessfully) for a competency evaluation, filed multiple pro se letters and motions (all while being represented by experienced counsel), and found a staunch, very often overzealous, advocate in his mother, Kathy Miles (a non-attorney)—all before electing on the first day of trial to plead guilty. But even then, when it seemed like this roller coaster was nearing the end of the track, Rosello sought to withdraw his plea of guilty. That prompted a renewed request by Rosello for a competency determination from his newest (sixth) set of attorneys, and most recently, a second opinion on the issue of competency. Rosello's request to withdraw his plea (Docs. 87, 91) and for a second independent competency examination (Doc. 101) are now before the Court.

I.  LAW & ANALYSIS

The Court will first turn to the issue of Rosello's competency and his request for a second opinion on competency before addressing Rosello's request to withdraw his plea.

A. Competency

A district court is obligated "to inquire into a defendant's competency whenever there is reasonable cause to believe that the defendant is incompetent to stand trial." *United States v. Denkins*, 367 F.3d 537, 545 (6th Cir. 2004) (cleaned up). Though this Court previously (and quite thoroughly) explained that there is no reasonable cause to believe that Rosello suffers from a mental disease or defect that renders him unable to understand the nature and consequences of the proceedings or to assist properly in his defense, *see* Doc. 78, we reluctantly granted Rosello's renewed (post-plea) request to determine mental competency and ordered on February 26, 2025, that he be designated to the Bureau of Prisons for a psychological evaluation and report. Doc. 97; 18 U.S.C. § 4241. Following a thorough evaluation, forensic unit psychologist Dr. Cynthia Low determined there is no evidence that Rosello suffers from a mental disease or defect that impairs his ability to understand the nature and consequences of the proceedings against him or impairs his ability to assist counsel in his defense. Doc. 99, PageID 506. She further opined that Rosello was not suffering from a mental disease or defect that impaired his ability to understand the nature and consequences of the proceedings or assist counsel in his defense at the time he entered his plea, nor that he suffers from any mental disease or defect that would impair the same at sentencing. *Id.*

Dr. Low's report in no way altered this Court's prior opinion or otherwise provided reasonable cause for concern that Rosello is not competent; if anything, this Court's opinions have been reinforced. *United States v. Heard*, 762 F.3d 538, 541 (6th Cir. 2014) (explaining that

the district court adequately inquired into the defendant's competency by ordering a report that yielded no cause for concern). Indeed, the results of the examination demonstrate that Rosello has "a rational as well as factual understanding of the proceedings against him" and "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam). To illustrate, Dr. Low's opinions reflect that Rosello "exhibited an above average understanding of the criminal charges and the related court proceedings" and "an above average capacity to cooperate and assist counsel in his defense." Doc. 99, PageID 524, 526. She also opined that there was "overwhelming support" that Rosello "understood the nature and consequences of the proceedings against him when he entered plea of guilty" and that he "possessed the ability to consult with counsel in his defense." *Id.* at 529. Although he criticized present and former counsel during his evaluation, Rosello "is not rendered incompetent to stand trial simply because he cannot get along with his counsel or disapproves of his counsel's performance." *United States v. Miller*, 531 F.3d 340, 349 (6th Cir. 2008).

Taking all of this into account and considering that counsel for the Government and counsel for Rosello stipulated to the report[1] and declined a hearing, the Court finds that a hearing on competency is unnecessary. *United States v. Washington*, 271 F. App'x 485, 491 (6th Cir. 2008) (explaining the district court need not hold a hearing where the court found no "reasonable cause" under § 4241(a) to believe the defendant was incompetent); *Markham v. United States*, 184 F.2d 512, 513 (4th Cir. 1950) (finding it unnecessary to hold a competency hearing where the evaluation shows that the defendant is competent). Further, Rosello has

---

[1] Rosello's counsel stipulated to the report, but expressly preserved objection to denial of Rosello's request for a second opinion.

3

not demonstrated why he should be entitled to a second opinion from an expert specializing in Autism Spectrum Disorder. Dr. Low thoroughly discussed and considered the impact of this disorder and Rosello's other diagnoses in her report. Doc. 99, PageID 523–24. Nothing in Rosello's request, nor anything in Dr. Low's report, demonstrates that a second opinion is warranted or that there is reasonable cause to believe that Rosello is anything but competent. Consequently, based on the report, the stipulation of counsel, and the Court's own observations during the pendency of this case, the Court finds Rosello competent.

### B. Guilty Plea

A defendant may withdraw a plea of guilty after the court accepts the plea, but before the court imposes sentence, if the defendant can show a fair and just reason for requesting the withdrawal. Fed. R. Crim. P. 11(d)(2)(B). But what is a fair and just reason? Because this is a complex inquiry dependent on the circumstances of each case, the Court must consider certain factors: (1) the time that elapsed between the plea and Rosello's motion to withdraw the plea; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether Rosello has asserted or maintained his innocence; (4) the circumstances underlying the entry of Rosello's guilty plea; (5) Rosello's nature and background; (6) the degree to which Rosello has had experience with the criminal justice system; and (7) potential prejudice to the Government if the motion to withdraw is granted. *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994). "No one factor controls; the list is general and nonexclusive." *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008).

### 1. Length of delay.

The first factor relates to the timeliness of Rosello's request to withdraw. Rosello did not advise the Court of his intent to withdraw his plea until 38 days after the Court accepted

4

his plea on February 12, 2024.² The Sixth Circuit "has declined to allow plea withdrawal when intervening time periods were as brief as one month." *United States v. Benton*, 639 F.3d 723, 727 (6th Cir. 2011); *see, e.g.*, *United States v. Davis*, No. 22-5215, 2023 WL 2487338 (6th Cir. Mar. 14, 2023) (27-day delay); *United States v. Spencer*, 836 F.2d 236 (6th Cir. 1987) (35-day delay). Thus, the first factor weighs against permitting Rosello to withdraw.

### 2. Reason for delay.

As to the second factor, Rosello argues that there was a valid reason for why he did not seek to withdraw sooner. Rosello claims that he wanted to withdraw his plea "shortly after [his] change of plea hearing" and that he notified his then-counsel of his intention "within a day or two of entering it." Rosello Aff., Doc. 91-1, ¶ 2; Doc. 87, PageID 411. But the Court doubts Rosello's assertions because in the weeks immediately following the change of plea hearing, Rosello's then-counsel continued to zealously represent him in preparation for sentencing and did not indicate that Rosello had voiced an intention to withdraw his plea until March 21, 2024. *See* Docs. 83, 84, 85, 86. At any rate, Rosello states that when he realized that he would have to file a pro se motion, presumably because then-counsel advised that they could not in good faith file such a motion on his behalf, Rosello was housed in administrative segregation without "access to [his] legal paperwork, or the means necessary to draft and file the Motion in a more timely manner." *Id.* ¶ 3. The Court struggles to find Rosello's assertions credible based on the Government's assertions and the Court's experience with this topic. The Government states that although Rosello was in isolation until March 8,

---

² On March 21, 2024, Rosello's then-counsel told the Court that Rosello intended to withdraw his guilty plea. Doc. 86. The Court received Rosello's pro se motion on March 28, 2024, though the Court learned that the motion had been mistakenly delivered to the Sixth Circuit on March 25, 2024. Doc. 87. Even if we view these facts in Rosello's favor and rely on the March 21, 2024, date as the starting point, 38 days had elapsed between the entry of his plea and the Court learning of his intent to withdraw it.

2024, due to having contraband in his cell, he would still have had access to legal documents and property save for commissary. Doc. 100, PageID 533. Having consulted with the U.S. Marshals Service about similarly situated defendants and isolation policies at the Butler County Jail, the Court knows this to be true. Thus, the Court does not find that Rosello has a valid reason for failing to withdraw sooner. But for the sake of argument, even taking Rosello's allegations as true, the remaining factors tip the scales against withdrawal.

### 3. Assertion of innocence.

Turning then to whether Rosello has asserted or maintained his innocence. "When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006) (quoting *United States v. Morrison*, 967 F.2d 264, 268 (8th Cir. 1992)). Although he asserts his innocence in his motion and previously asserted his innocence in other proceedings, Rosello admitted his guilt at the change of plea hearing. Hearing Tr., Doc. 98, 49:22–50:4. He affirmed at that hearing that he understood he could persist in his not guilty plea if he chose to do so. *Id.* at 6:2–8. Aside from identifying a "minor" factual issue relative to his residence that was immaterial to a factual finding of guilt, Rosello confirmed the factual bases supporting his guilty plea. *Id.* at 45:24–46:18. When a defendant like Rosello has admitted his guilt under oath and signed a plea agreement confirming his guilt and the factual bases for the charges, "pre- and post-plea assertions of innocence fall short of the 'vigorous and repeated protestations' [the Sixth Circuit] requires to support withdrawal of a guilty plea." *United States v. Baker*, No. 21-3159, 2022 WL 1017957, at *5 (6th Cir. April 5, 2022). Thus, this too weighs against withdrawal.

6

### 4. Circumstances underlying the plea.

The circumstances underlying the entry of Rosello's guilty plea also support the conclusion that he should not be permitted to withdraw his plea. Rosello alleges that he "was not in the proper state of mind," and that his mental state was "severely diminished" and "exacerbated by austere conditions in the jail," resulting in him "feeling dazed and out of sorts," "rattled," "stressed," and unable to stop the proceedings "out of fear." Rosello Aff., Doc. 91-1, ¶¶ 4, 6–7, 12. But the extensive colloquy undertaken during the change of plea hearing demonstrates otherwise. Rosello affirmed that he was able to understand and perceive what was happening at the hearing. Hearing Tr., Doc. 98, 49:10–16. And when asked whether his mental state was affecting his ability to understand the proceedings, Rosello replied, "No, sir." *Id.* at 49:17–20. Rosello was communicative, engaged, and attentive—just as the Court had observed him at prior hearings. And when he did not understand a question, Rosello indicated so. For example, when asked whether he had discussed the advisory sentencing guidelines with his then-counsel, he told the Court that he had not. *Id.* at 17:6–13 ("All we've talked about is how much time it could potentially be. But as far as the process and all that, no, sir."). Upon hearing this response, the Court took an extended recess to allow for those discussions with his attorneys to occur to Rosello's satisfaction. *Id.* at 19:5–12; 20:16–23.

Apart from his mental state, Rosello argues also that he was coerced or pressured into pleading guilty by his then-counsel. Rosello's attempts to place blame on counsel come as no surprise to the Court because Rosello has been at loggerheads with many, if not all, of his counsel throughout the pendency of these proceedings. Rosello's history with, and complaints about, prior counsel put his present complaints in perspective. Rosello had three sets of *retained* counsel before the third set sought to withdraw citing "a fundamental disagreement

7

concerning the formulation and/or implementation of a defense strategy in this case." Doc. 33, PageID 127. Based on his indigency, the Court appointed new counsel from the Federal Public Defender's Office, whom Rosello later sought to have replaced. When he did so, Rosello accused counsel of mocking, laughing, and shouting at him, abruptly ending discussions, leaving him confused and incapable or unable to defend himself. At the same time, Rosello (with the aid of his mother, Kathy Miles) sought appointment of an attorney from outside of this Court's district and outside the states of Ohio, Kentucky, and Indiana based on unsupported and unsubstantiated claims of conflicts of interest and a "tainted attorney pool." To his dismay, the Court appointed new counsel from the Criminal Justice Act Panel—counsel that he sought to have replaced before trial and the same counsel that he now accuses of coercing him into pleading guilty. What's more, Rosello similarly accused an attorney retained as a forensic computer expert of "berating" him and "yelling" at him when they met. Sealed Hearing Tr., Doc. 73, 13:9–14:1.

All and all, Rosello has made similar and misleading accusations about many of his prior counsel and others involved in his case. And the same is true of his change of plea hearing. Rosello affirmed that he was pleading guilty of his own free will because he was in fact guilty. Hearing Tr., Doc. 98, 42:23–25. When asked if anyone had forced or threatened him to plead guilty, Rosello said that it depended on how force was defined because his counsel had advised him, after assessing the strengths and weaknesses of his case, that a plea was the "best option" and that his "life would be over" if he did not plead guilty. *Id.* at 43:1–12. This is a far cry from coercion. At the end of the day, "[c]ounsel must bring to bear his or her professional experience and judgment in advising the defendant during the course of a prosecution. The probability of conviction and the factors affecting sentencing are proper

8

subjects of the attorney's advice." *United States v. Dumersier*, 19 F.3d 20 (6th Cir. 1994) (per curiam) (unpublished table decision) (internal citation omitted) (citing *Smith v. United States*, 265 F.2d 99, 100–01 (D.C. Cir. 1959)); *see also United States v. Juncal*, 245 F.3d 166, 172 (2d Cir. 2001) ("Nor does defense counsel's blunt rendering of an honest but negative assessment of appellant's chances at trial, combined with advice to enter the plea, constitute improper behavior or coercion that would suffice to invalidate a plea."); *United States v. Buckles*, 843 F.2d 469, 472 (11th Cir. 1988) ("A defendant cannot complain of coercion where his attorney, employing his best professional judgment, recommends that the defendant plead guilty."); *United States v. Vargas*, 601 F. App'x 481, 482 (9th Cir. 2015) ("[A] frank assessment of [the defendant's] predicament does not amount to coercion," and, in fact, "trial counsel would have been derelict in his duty to [the defendant] had he not provided an honest opinion of [the defendant's] chances of success if he took his case to trial."). The record here clearly demonstrates that Rosello's plea was voluntary, and that counsel advised him to plead guilty based on their many years of experience and honest assessment of Rosello's case.

Though relevant, the timing of Rosello's plea does not help him either. Rosello elected to plead guilty on the *first* day of trial—but not before extensive negotiations with counsel had taken place outside the Court's presence—and while the jury venire sat idle for hours in an anteroom waiting to be summoned to the courtroom so the trial could begin. In fact, Rosello spoke with counsel for several hours before he elected to execute the Plea Agreement. Hearing Tr., Doc. 98, 51:1–17. After those lengthy discussions, the Court proceeded with a change of plea hearing at which time Rosello's counsel confirmed that they did not doubt his competency to enter a plea. *Id.* at 8:4–6. During the hearing, Rosello affirmed that he understood he could persist in his not guilty plea and advised that he wished to withdraw his

plea of not guilty. *Id.* at 6:2–13. Rosello likewise affirmed that he understood the nature of the offenses and the maximum penalties, and he confirmed that he had discussed possible defenses with counsel. *Id.* at 5:13–22; 13:10–13. Rosello stated that he understood his constitutional rights and that he understood he would give up those rights if he elected to plead guilty. *Id.* at 8:8–9:22. Although Rosello said that he was not fully satisfied with his counsel, he reiterated concerns that the Court had addressed, such as differences with his attorneys about witnesses to call and evidence to present. *Id.* at 10:10–11:17. At the end of the hearing, the Court was satisfied that Rosello was fully competent and capable of entering an informed plea, that his guilty plea was knowing and voluntary, and that his plea was supported by an independent basis in fact for each of the essential elements of the offense charged. Nothing that Rosello raises in the motions now before the Court bring those findings into question or otherwise suggest that the circumstances favor withdrawal.

### 5. Defendant's background.

That brings us to Rosello's background. At the time he entered his guilty plea, Rosello was 34 years old. Years earlier, Rosello graduated from a private all-male high school in Cincinnati, Ohio, and attended some college. Doc. 10, PageID 25. In high school, Rosello was on the honor roll and completed Advanced Placement courses. Doc. 99, PageID 509. He tested out of most college first-year courses. *Id.* Rosello did not finish college because, according to him, he found campus to be overwhelming and he got "caught up in the wrong crowd." *Id.* Because individuals like Rosello "with the equivalent of a high school education do not raise red flags with respect to this consideration," his educational background does not support withdrawal. *United Sates v. Watkins*, No. 21-1241, 2022 WL 43291, at *2 (6th Cir. Jan. 5, 2022).

That said, Rosello does not dispute his educational history and instead relies heavily on his Autism Spectrum Disorder to argue that his diagnosis has had an adverse impact on his ability to understand the proceedings and that it adversely impacted him when he entered his plea. But the Court has had numerous interactions with Rosello throughout this case and has been privy to several pro se filings that he has authored. During colloquies with the Court at numerous hearings, Rosello has been able to advocate for himself exceptionally well and has repeatedly demonstrated a greater depth of understanding than many other defendants. Based on those observations, there is no sign that Rosello's diagnosis has impaired his ability to participate or otherwise understand the proceedings. The psychological report corroborates this conclusion. Dr. Low opined that Rosello is "very high functioning" and that he demonstrated "an above average understanding of the criminal charges and the related court proceedings." Doc. 99, PageID 524. Thus, there is no reason to believe that Rosello's background, specifically his Autism diagnosis, favors withdrawal. *See United States v. Martin*, 668 F.3d 787, 796 (6th Cir. 2012) ("Although elements of Martin's background were difficult, his circumstances do not suggest an inability to understand the proceedings. He has some high school education, speaks English, and over the course of a lengthy colloquy regularly affirmed his understanding of the proceedings.").

### 6. Prior experience with the criminal justice system.

Beyond this case, Rosello has one pending charge for prohibited use of an electronic communication system to procure a minor in sexual performance in the Circuit Court in Jefferson County, Kentucky. Doc. 10, PageID 27. Rosello was arrested on that charge in November 2016, but to the Court's knowledge, that case has been on hold pending resolution of this case. (Rosello was arrested for the instant offenses charged in the Superseding

11

Indictment on January 27, 2021—approximately five years later). Rosello's arrest in the Kentucky case suggests that he has limited experience with the criminal justice system. But the Court hesitates to rely on that alone to find that this factor favors Rosello. As noted, throughout these proceedings, Rosello has demonstrated a sophisticated knowledge of the criminal justice system through extensive colloquies with the Court and several filings that he has submitted pro se. *See e.g.*, Doc. 87; *United States v. Watkins*, 815 F. App'x 22, 26 (6th Cir. 2020) (finding the defendant's "proven ability to communicate pro se" weighed against withdrawal). Separate and apart from his request to withdraw his plea, Rosello has articulately, though unsuccessfully, requested reconsideration of prior rulings, directed prior counsel to file evidentiary motions, requested a forensic examination by a forensic expert, and has asked to independently view all of the discovery in this case.[3] Although he met resistance from several sets of prior counsel, Rosello endeavored to develop defense strategies, identify prospective defense witnesses, and recommend evidence to present. All told, in his numerous interactions with the Court, Rosello has demonstrated a better grasp on the criminal justice system than many of the Court's more experienced defendants. This militates against this Court finding him lacking when it comes to experience with the criminal justice system.

### 7. Prejudice to the government.

The bottom line is that there is no fair and just reason for withdrawal. Thus, the Government need not establish prejudice. *Spencer*, 836 F.2d at 240. Even so, there is prejudice all the same. This case is more than four years old and involves offenses that occurred as early

---

[3] Because this Court does not permit hybrid representation, the Court does not publicly docket pro se filings from defendants that are represented by counsel. Upon receipt of any pro se motion or letter in this case, the Court provided a copy to all counsel and docketed a sealed copy of the filing. Following a telephone status conference, the Court later converted Rosello's Pro Se Motion to Withdraw Guilty Plea (Doc. 87) to a public filing. That said, all other pro se submissions in this case remain under seal.

as December 2019. Many of the delays in this case are attributable to Rosello. Not only has he sought new counsel on numerous occasions, but he successfully sought to continue trial at least twice. Rosello then elected to plead guilty on the day that trial was set to begin. The timing of his plea meant that the Government and its witnesses, including the Minor Victim, had undertaken significant preparations for what was expected to be a week-long trial. And it is not lost on the Court that those preparations occurred nearly a year and a half ago. Given the delays, and the time since the offenses took place, there is cognizable concern that the significant passage of time would impair witness recollections. These circumstances are indicative of prejudice and are enough to find that the seventh factor weighs against withdrawal. *United States v. Leedy*, No. 21-3573, 2022 U.S. App. LEXIS 10491, at *15 (6th Cir. April 19, 2022) ("[G]ranting the motion to withdraw could potentially prejudice the government. The crime occurred in 2015. A jury trial was ready to begin, and witnesses—two of whom were minors—had been prepared when Leedy entered his guilty plea. Over time, the memories of witnesses fade and they may become unavailable.").

Beyond this, the Court would be remiss not to recognize the significant impact that withdrawal would have on the Minor Victim. Years after the events giving rise to the charges in this case, the Minor Victim had to relive those events at great emotional expense in order to prepare to testify at trial. Allowing Rosello to withdraw his plea would require the Minor Victim to undertake that significant emotional burden again. Doc. 100, PageID 538. But the impact does not end there. The Minor Victim has had to suffer the consequences of the many delays that Rosello has caused. She took a reduced workload leading up to the original trial date to accommodate the impending stress of trial and she delayed aspects of her therapy plan until after trial at the recommendation of her health care providers. Doc. 67, PageID 225.

Through no fault of her own, the Minor Victim has been left waiting to move on from a chapter in her life that she desperately wishes to put behind her. Withdrawal would only unjustifiably prolong that even further, perhaps only to see Rosello change his mind once more. Any way you slice it, this is prejudicial. *United States v. Morrison*, 967 F.2d 264, 269 (8th Cir. 1992) ("Whether we classify this as prejudice to the government, or prejudice to the complaining victim, it is real prejudice, caused by the timing of Morrison's guilty plea and subsequent attempts to withdraw."). Under these facts, prejudice to the Minor Victim would result in prejudice to the Government. *See United States v. Lineback*, 330 F.3d 441, 444 (6th Cir. 2003) (finding the district court did not abuse its discretion in finding that the prejudice suffered by the minor victims would result in prejudice to the government).

Thus, having considered each of the factors prescribed by the Sixth Circuit in *Bashara*, Rosello's request to withdraw his guilty plea must be denied.

## II. CONCLUSION

Based on the exhaustive analysis above, Rosello's Motion for a Second Opinion on Mental Competency (Doc. 101) and his Motion to Withdraw his Guilty Plea (Docs. 87, 91) are hereby **DENIED**. The Court will contact counsel to set this matter for sentencing.

**IT IS SO ORDERED.**

August 11, 2025

Jeffery P. Hopkins
United States District Judge